## ALLEN *vs.* BRUCE.

Application to take the poor debtor's oath need not state the amount of the execution on which the debtor was arrested.

Where a return of service of notice on such application was sworn to before the surety of the debtor—*Held*, to be sufficient.

Allen *v.* Bruce.

Where the return of the proceedings before the magistrates was not made to the office of the court of common pleas within thirty days—*Held*, to be merely directory on the magistrates, and that it was immaterial as regarded the debtor's discharge.

Where, on such application, one of the magistrates selected was a brother of the surety on the debtor's bond—*Held*, that such relation was no legal disqualification for the exercise of power as a magistrate in such case.

DEBT, on two joint and several bonds, given pursuant to the statute for the ease and relief of poor debtors, executed by the defendant, as one of the sureties of Charles Underwood, the debtor, to Ezra Allen, the creditor, for the several sums of $725.26, and $142.98, and dated the 5th day of February, 1838 ; each with the condition that if Underwood, then a prisoner at the suit of Allen, should, within one year from the 5th day of February, 1838, apply to the proper authority, and be admitted to take, and actually take, the poor debtor's oath ; or, in default thereof, should surrender himself up to the creditor, in the manner prescribed by law, then the obligation was to be void, but otherwise to remain in full force.

The action was commenced on the 29th day of June, 1839.

It appeared that two applications in writing were duly made by Underwood, the debtor, to David Underhill and John Bruce, justices of the peace and quorum for the county of Hillsborough, to be admitted to take the poor debtor's oath before them. Each application stated that the debtor had been arrested on an execution recovered by the present plaintiff against him, and that he had given bonds, agreeably to the provisions of the statute ; but the amount recovered in either execution was not stated.

Orders of notice were issued on these applications, which were duly served on the attorney in said suits, as appeared by the return of one James Hopkins, which was sworn to before Nathaniel Bruce, the defendant in this action, as a justice of the peace.

The poor debtor's oath was administered to Underwood at the time appointed by the magistrates, no one having ap-

peared on the part of the creditor, to object thereto. A record of the proceedings of the magistrates was returned to and filed in the office of the clerk of the court of common pleas, on the 5th day of July, 1839.

One of the magistrates before whom the oath was administered, was a brother of the present defendant.

The plaintiff contended that the discharge of Underwood was invalid, for the reasons, 1. That the applications to be admitted to take the poor debtor's oath, and the notices, did not show to which execution or arrest they applied. 2. That the return of the services of the notices was sworn to before the defendant. 3. That one of the magistrates by whom the poor debtor's oath was administered was the defendant's brother. 4. That the proceedings were not returned to the office within thirty days.

It was agreed by the parties that if the court should be of opinion the action might be sustained for condition broken, judgment should be rendered for the plaintiff, for such sum as might be equitably due him on the executions with costs; otherwise the plaintiff was to become nonsuit.

*H. Newton,* for the plaintiff, relied on the several positions taken by him, but submitted them without argument, with the exception of the point that the discharge of Underwood was invalid, because one of the magistrates by whom the poor debtor's oath was administered was a brother of the defendant.

Had the magistrate been himself a coöbligor on the bond in question, it would hardly be pretended he could rightfully have administered the oath to Underwood; and yet he would have been no more a party to the proceedings in that case than the defendant is in this. The defendant was not in form a petitioner, but was interested in the event of the application, and was jointly and severally bound with Underwood in the penal sums named in the bond; and, if so, it would seem clear that a brother of a party thus interested would be excluded from jurisdiction as a magistrate.

Allen *v.* Bruce.

To the point that nearness of kindred disqualifies a magistrate from acting in a judicial capacity, be cited *Co. Lit.* 150, 294, *a.*; 3 *Blac. Com.* 303–5; 5 *N. H. Rep.* 94, *Bean* vs. *Quimby.*

If a juror be cousin to him in reversion, it is only cause of challenge to the favor, because he, in reversion, is not a party to the record; but it would be a principal challenge if he were a party by voucher, aid or receipt. 3 *Bacon's Ab.* 259; *Co. Lit.* 158.

*G. Y. Sawyer & J. U. Parker*, for the defendant. The notices to the plaintiff were sufficiently specific. Had there been but one arrest, the notice must have been presumed to apply to that. The debtor here being arrested on two several executions in favor of the plaintiff, the applications for a discharge must apply to the two executions. There could be no reasonable ground of mistake. Naming the amount recovered on each execution in the notices is immaterial. The statute does not require it. The oath is not in satisfaction of such amount; it is merely evidence of inability to pay any thing. 5 *N. H. Rep.* 542, *Eaton* vs. *Miner;* 6 *Ditto* 374, *Osgood* vs. *Hutchins.*

2. The act of administering the oath to the individual who served the notice, that the return made by him was true, was merely ministerial, and the defendant might perform it as well as any other magistrate. A creditor may administer the oath to appraisers in a levy of his own execution. 1 *N. H. Rep.* 362, *Atherton* vs. *Jones;* or he may take an acknowledgment of a deed to himself.

3. The principal objection relied upon, is the exception that one of the magistrates before whom the poor debtor's oath was administered, was a brother of the surety on the debtor's bond; and, therefore, within such nearness of consanguinity as should preclude him from any action in the case. But the defendant was no party to the application; he was merely collaterally interested, and the excep-

tion arising from relation as kindred has never been applied in cases of liability so contingent and remote.

4. The record of the oath to the debtor was not returned to the court within thirty days, as is required by the statute; but this is no part of the duty of the debtor. The provision is merely directory upon the magistrates, and they alone are liable for neglect in this respect. The condition of the bond was performed the moment the oath was actually taken, and the debtor was thereby discharged.

UPHAM, J. In the case of *Gear vs. Smith & a.,* 9 *N. H. Rep.* 65, it was holden by the court, that the admission of an individual by commissioners of jail delivery to take the poor debtor's oath, was a judicial act; and that, where application was made to magistrates by an individual to take the poor debtor's oath, and one of the magistrates selected by him was an uncle of the debtor—which fact was unknown to the creditor, or his attorney, so that the exception might be taken at the hearing—permission to take such oath on a hearing before the magistrates was invalid.

There is no evidence in this case that the fact of the relationship of one of the magistrates to a party to the bond, was known to the creditor or his attorney at the time the oath was administered; and the exception, therefore, cannot be regarded as having been waived.

The question arises, then, whether a surety on a jail-bond is so far a party to the proceedings instituted for the debtor's release, that his near kindred are precluded from officiating as a magistrate in such case.

It is contended, that if the surety himself could not act as a magistrate in the proceedings to release the debtor, his near kindred could not; but this is not the criterion to determine a question of this description. The rule disqualifying a magistrate is not like that which operates to the rejection of a witness. Any direct interest, however small, will exclude a witness; but an exception arising to a magistrate

Allen *v.* Bruce.

on account of his relationship to a party, is wholly a question of degree, both as it regards nearness of kindred and extent of interest.

Within certain degrees of kindred, the law implies such a tendency to favor on the part of the magistrate, as to disqualify him, on the constitutional ground that "it is the right of every citizen to be tried by judges as impartial as the lot of humanity admits;" but where the relationship is slight, such objection does not exist, as the inclination to favor in such case is not supposed to exist. And the same rule applies to extent of interest. If the interest of a party is slight, the objection to the action of a magistrate on account of relationship to the party, may be immaterial; so, also, where the interest is remote or contingent; and for this reason in some cases the magistrate might act, on account of farther remoteness of bias on his part, where the party himself could not act. If we should concede, therefore, that the coöbligor on the bond could not act in the capacity of a magistrate to take the oath of the debtor, it will not follow that the brother of the coöbligor on the bond also could not act. The rule as applicable to both is by no means the same.

On the question, as to the degree of relationship or interest which should exclude a magistrate, it is difficult to establish any general rule.

In the case of *Eggleston* vs. *Smiley,* 17 *Johns.* 133, it was holden that "the relationship, in order to exclude the magistrate, must be so near as to amount of itself to evidence of partiality, or fraud, should he attempt to exercise jurisdiction;" but the difficulty still remains as to what constitutes such evidence. In that case it was holden that a magistrate who was half uncle to the plaintiff's wife was not disqualified from acting.

In *Pierce* vs. *Sheldon,* 13 *Johns.* 191, it was holden to be questionable whether it was a legal disqualification to a magistrate that the plaintiff in the case was the son-in-law of the magistrate, though the court remark, "that the gross in-

decency of an exercise of judicial power in such case should induce them to scrutinize the proceedings with a jealous eye."

It is quite as difficult to fix on any precise limit as to the extent or nature of interest in a party which will exclude a magistrate on account of relationship. We think, however, where the party is only conditionally liable, as in the present case, on default of his principal, which default may or may not accrue, mere relationship to a surety who is no party to the proceedings, is not such an objection as to disqualify the magistrate.

In this, and numerous similar cases, as in the trial of an original suit, where bail has been taken; or a third person has become indorser of a writ; or where suit is against a deputy for neglect of duty, and the bondsmen of the sheriff may thus be rendered liable; and in many other instances of collateral liability for official responsibility where an original suit is pending, in which such person is not a party, we hold the objection to the action of the magistrate, on the score of kindred to the party who may thus be ultimately liable, furnishes no such evidence of partiality as to exclude his jurisdiction. We are unable to find any authorities which go to this extent, and we see no reason to regard a person standing in such relation as subject to bias to such a degree as to render it hazardous or dangerous to permit him to act as a magistrate. There are some cases of this description, in which an individual, from motives of delicacy, might relinquish his jurisdiction; but we do not regard the exception as a sufficient disqualification to a legal exercise of judicial power. The objection, therefore, which has been taken on this ground, is overruled.

Various other objections have been taken, but most of them have been heretofore holden invalid by us, and we regard them as insufficient, for the reasons urged by the counsel for the defendant. The exceptions taken, therefore, to the discharge of the debtor, cannot prevail, and there must be a *Nonsuit entered.*